Good morning. Christopher Stender for the petitioner. Somewhat similar to the last case, our argument is also that the withdrawal of the petitioner's application for asylum was not considered an intelligent. Sotomayor Well, could I ask a question first? Bursch Yes. Sotomayor Is this a petition for review only of the denial of the reopening? Bursch It's a – I was confused as to whether it was to reinstate or reopen. As far as what the petitioner is asking for the Court to do? I'm sorry. Sotomayor What are you – what are you asking us to review? Bursch We're asking the Court to review the fact that the respond – that the petitioner withdrew her asylum application. Sotomayor But what – but what order of the BIA are we reviewing? Bursch The June 1st, 2004, order where the BIA adopted and affirmed the immigration judge's decision. Sotomayor Okay. Roberts So that was the one where – that was basically where the Board affirmed the IJA's decision that the transcript – based on the transcript that the Respondent's withdrawal of her application – her application was intelligently made. Bursch Correct. Roberts And that's your argument, that it wasn't intelligently made? Bursch Yes, Your Honor. Roberts I see. Okay. Bursch Okay. What we believe is called into question here is the proper legal standard under the petitioner must show new evidence that was not previously available in order to have her asylum application reinstated before the immigration court. We – it is our position that the immigration judge presented a improper standard requiring that the petitioner show that there was some new evidence or new reason to – Roberts Well, why wouldn't it be appropriate? Why shouldn't that be the standard? I mean, otherwise, a person could just toy with the court. They could decide to withdraw their claim and then reinstate it based upon the earlier – earlier situation, rather than – and then if they decided they wanted to withdraw it again, withdraw it and then reinstate it based upon the earlier – the earlier evidence. I mean, doesn't there have to be some finality here that warrants reopening or reinstating? Bursch It's – if you look at the facts of this case, her application was pending for about seven or eight years. She appears in front of the immigration judge with her counsel. They go on the record for about one minute. There's an off-the-record discussion. The immigration judge comes back on the record and says that the petitioner has decided to withdraw her application for asylum. The judge goes through a very brief colloquy saying, do you understand that you're going to withdraw it? Do you understand that that decision is final? And she answers yes, yes, and yes, and it's over. Within two or three months of that, she files a motion to reopen her – and reinstate her application for asylum. We're – do not have the benefit of what happened off the record. Judge Simpson's colloquy with the petitioner is not sufficient to show that she had a full understanding of what that withdrawal meant, and I don't think there's any argument that it was a strategic decision because there was no other relief available to the petitioner. Withdrawing the asylum application was her only real form of relief from removal from the United States. Sotomayor, what's the basis? Does she – what is – does she show any basis for her entitlement to? Yes. Relief, yes? Yes. What is it? Well, first of all, her statement for asylum has always stood in the record until, of course, it was withdrawn, that she feared return to her country because of forced recruitment by the guerrillas. Also … Well, does she have anything more than what was in her original application? Well, what was added with the motion to reconsider was additional evidence and country – that country conditions had not changed sufficiently to the point where the petitioner felt secure enough to return to Guatemala. There's a plethora of information that was argued in the motion to reconsider that, in fact, conditions had not changed to such an extent that the petitioner felt secure in returning to Guatemala. And if not for her withdrawal of that application, she would have had the ability to go forward with it and have her case considered by the Immigration Court. That never occurred. So the situation was basically the same as it was when she withdrew it, as far as the record is concerned? The situation … In Guatemala. In Guatemala. All that the reopening would show is that the situation – that her application and the situation in Guatemala are the same as when she originally applied and when she withdrew it. Correct. In other words, she would have no motivation to withdraw her asylum claim because it was still not safe for her to return to Guatemala. But she did withdraw it. Yes, she – correct. There is a withdrawal. And it's very brief, and it's off the record. There's no discussion of the reasons or decision made. It's not off the record. There's a record, isn't there? I mean, didn't the IJ ask her, do you understand that if you withdraw this application, you will not be able to obtain asylum, withholding of removal or protection under the Convention Against Torture? And she answered yes. And with that understanding, you wish to withdraw the application from further considerations on the merits of asylum and withholding or CAT? Yes? I mean, you know, that was on the record. In no way is that sufficient to show that the Petitioner adequately understood that what the consequences of the withdrawal were. Also, the immigration judge – Well, can you cite a case to us that requires the kind of – of colloquy, preparatory to a waiver that – or a withdrawal that is maybe akin to that of taking a guilty plea in a waiving trial or something of that sort? In an immigration context? It's a procedural point. They just simply wish to withdraw some claims. And that's – and that's what they did. Well, the case law, I could pull out from the brief. We did cite that the – we believe the legal standard is clear and convincing evidence that the withdrawal is considered unintelligent. This record does not display that that withdrawal was done. It was asked, do you really mean to – do you really want to do this? There was a lawyer. If you were to try to – if you were to go forward and try to claim ineffective assistance of counsel, you would have to show that – that you would have won, that you were prejudiced by this. So what – Well, I can point out – You can't show that. I would like to point out an additional fact where Immigration Judge Simpson states erroneously that a declaration was required to be included in her asylum application in order for the Petitioner to go forward with it. He states it on the record and says, for whatever reason, you have not provided the Court with a written declaration regarding your basis for asylum. That's not a requirement, and we don't know whether Petitioner's counsel or Petitioner took that into consideration in deciding to withdraw the application. From the record before this Court, it looks exactly like that's what happened. With the application of that legal standard that Judge Simpson stated, which the Petitioner could not comply with, she decided to withdraw her application for asylum, and then seeks to reinstate it within just a couple of months of – of the withdrawal. What we're asking the Court to do is just to permit the Petitioner to have her day in court, to have her asylum claim considered in its entirety, as she's always sought to do since she originally filed it, I believe, in 1991. It was pending from 1991 until 2003, and clearly, she had no reason to come into court and withdraw her asylum application on the day of her hearing. There was not a alternative form of relief that she was available for, and there certainly was no benefit to her withdrawal. The ---- Roberts, Jr. Now, the record shows that the IJ says, all right, in your particular case, I have a request for asylum in the United States. However, your counsel indicated at this particular time, you, for whatever reason, are unable to satisfactorily do the affidavit or declaration. Right. Are you saying that someplace earlier in the record, the IJ said, you can't proceed here unless you have a – filed an affidavit? Or is this the reference you're making, saying that the IJ required it? That's the reference I'm – that's what I'm referring to. There is no other place in this record where the IJ said anything about such a declaration, is there? Or no. That would be the reference. Well, now, and you're telling us that that constitutes a demand or advice by or an assertion by the IJ that such a declaration was necessary? Yes. The immigration judge is setting a certain threshold here which does not exist under immigration law. There is no requirement that a written declaration – You understand the struggle I'm having. That's not an unequivocal assertion that you have to file such a declaration. All the IJ is saying is, your counsel tells me for whatever reason you can't do it. Can't do it whether you need it or not. You can't do it. Maybe she didn't want to lie. We don't know. But there was already a Form I-589, Request for Asylum and Withholding. I know, but – Which outlined her asylum claim. We don't know what motivated her to say, we're not going to file the affidavit. Now, I could speculate. We could speculate. She just didn't want to lie. We don't know. Now, should we require the counsel to tell us, she's been lying up until now, and we don't want to perpetuate the lie. We want to dismiss our petition. We don't know. How far do we go in that, or have to go? Well, I think under the facts of this case, considering the application was pending for, since 91 until 2003, for some 12 years, and then within two or three months of the withdrawal, she sought to reinstate it through her motion to reconsider. But certainly, I think that should speak volumes also. Okay. You're way over your time. Thank you. Thank you. You've answered my question. Thanks. Thank you. Good morning, Your Honors. My name is Julie Pfluger. I'm here to represent the Department of Justice in this matter. We respect the government respectfully request that this Court affirm the decision of the Board of Immigration Appeals. This Court reviews the denial of a motion to reopen for the abuse of discretion. Therefore, the Board of Immigration Appeals decision must be upheld unless it's found to be arbitrary, irrational, or contrary to law. And we are dealing here with a motion to reopen. Excuse me? We are dealing here with a motion to reopen, correct? That's correct, Your Honor. According to 8 CFR 103.23d3, a motion to reopen must specify new facts. They need to be material and previously unavailable. And the motion to reopen, it specifies, will not be granted if the right to apply was explained and an opportunity to apply for relief was afforded. Those are three separate portions of 103.23. Now, Petitioner mistakenly argues that all she needs to demonstrate is a prima facie case for eligibility for relief. And this is mistaken. Under the Supreme Court's holding in Abudu, the Supreme Court specifically stated that the Board of Immigration Appeals can deny a motion to reopen under three separate grounds. One, no prima facie eligibility. Two, no previously unavailable material evidence. And three, they're not entitled to a discretionary grant of relief. Now, Petitioner's arguing that because they claim that they have prima facie eligibility for relief, that therefore the immigration judge was required to grant this motion to reopen. And that is simply incorrect. Petitioner cites Mendez-Gutierrez as the case. And Petitioner's reading of Mendez-Gutierrez is mistaken. What Mendez-Gutierrez says, in that case, the Board of Immigration Appeal denied a motion to reopen because no prima facie showing of eligibility. And the board only looked at past persecution and didn't look at a well-founded fear of future persecution. Therefore, when the case got to this court, the court said, you can deny for no prima facie showing of eligibility. But if you're going to do that, you need to look at past persecution and well-founded fear of persecution. This court did not say, that's the only thing you look at. It's clear under Abudu that the Board of Immigration Appeal can deny a motion to reopen under very separate grounds. Therefore, Petitioner's argument that all you need to do is show prima facie eligibility is mistaken. Secondly, Petitioner's claiming that her withdrawal of her asylum application was not knowing and informed. Petitioner's counsel informed the immigration judge that she wished to withdraw. Petitioner was there. Petitioner was under oath. Petitioner had a translator. And Petitioner confirmed that she wished to withdraw this application. She claimed in her appeal to the Board of Immigration Appeal that her counsel told her that she needed to provide a declaration in support of her asylum application. This is on page eight of the administrative record. She now claims in her brief to this court that it was either her counsel or the immigration judge that told her she needed to have this declaration. It seems somewhat suspicious that she doesn't know who told her that she needed to have this. But regardless, if she's claiming that the immigration judge told her this is, she hasn't raised this before the board and the court can't consider this because of a lack of jurisdiction. If she's claiming that her counsel told her this, then she should be addressing this issue as an ineffective assistance of counsel claim. And she's done nothing to satisfy the Lozada requirements in order to do that. Roberts. Roberts. Would it be impermissible for an immigration judge who doubts the credibility of a petitioner to require a statement under oath before the claim would proceed? Is that within the immigration judge's authority? I mean, the immigration judge has to proceed on the basis of facts. And if the immigration judge has a reason to believe that, you know, there is, you know, there's maybe some misstatements or misrepresentations going on in this application, couldn't the immigration judge ask for a sworn statement? Well, the immigration judge would have a sworn statement. I mean, would have, under oath, would have the application for asylum and would have the statement provided in support of the application if that was provided. What the immigration judge could and is required to do is to understand what happened here, I guess. Why this declaration came up. Why the declaration? Well, petitioner claims that either the immigration judge or her counsel told her that it was required, that she needed to have this declaration, and there's no evidence of that in the record. As Your Honors pointed out earlier, what the immigration judge does say is for whatever reason, you're not, you can't complete this declaration. And we don't know if that was a strategic move. It's not the immigration judge's duty to examine the strategy of counsel. It's the immigration judge's duty to explain that you have a right to apply and afford that right to apply. And the immigration judge clearly did that in this case. Now, why the petitioner withdrew the application, that is not the immigration judge's. Does the immigration judge have to hear some evidence? When the petitioner withdraws the application? No, when you have a, when the petitioner appears for the hearing. If the application was going to go forward? Yeah. If it's going to go forward, is there supposed to be some evidence? Can it be decided just on the basis of the application? It could be, but it is Petitioner's right to present, you know, their own testimony or expert witness testimony or documentary evidence. I mean, that's Petitioner's right, but it certainly could be decided only on the application. However, that isn't the immigration judge's right. So if the petitioner offered to submit a declaration in addition to the application at an earlier time, then that could be, the immigration judge could say, sure, I'll accept that. Yes. In lieu of live testimony or subject to cross-examination, something of that sort. There's no requirement that you need to give this declaration. There's no requirement that you need to testify. It could be volunteer done. All of this is up to the petitioner and up to their will. If they want to do this, they're certainly, they can do this at any point before. In Petitioner's statement that the immigration judge is saying, your counsel has said that you are unable to give this declaration, Petitioner's trying to twist this to say that the immigration judge has required this declaration. It's just not supported by the record. As you stated earlier, the immigration judge went above and beyond by saying, you know that if you withdraw this, you will not have an avenue of relief. And Petitioner's assertion that there was no other relief available isn't correct either, that she did have voluntary departure, which is a form of relief. She was granted voluntary departure, which if she would have proceeded and if it would have been found to be a fraudulent application, she would not have had that relief. So that's important relief, isn't it? That is important relief. Because it has collateral consequences should she want to come back into the country. That's right. That's right. Voluntary departure, if you are ordered removed, then you'll have certain bars against you. You can't return for 3 or 5 or 10 years, but if you're granted voluntary departure, then it's easier for you to return to the United States and seek other relief. As I stated, the immigration judge fulfilled his duty by allowing the Petitioner to withdraw, explaining to her you have the right, these are your consequences, but the immigration judge is under no duty and certainly would be beyond his scope in not allowing Petitioner to withdraw. He said to Petitioner, you understand you're withdrawing. He says, if you withdraw, you will not, I repeat, you will not be able to attain asylum or other forms of relief. And it goes above and beyond in stating, do you understand, three times. And Petitioner says, yes. As I stated, she was under oath, she was there with an attorney, she had a translator, and I don't know what more the immigration judge could have done to make sure that her withdrawal was knowing voluntary. If you have no other questions, thank you, Your Honors. The case just argued is submitted for decision. We'll hear the next case, which is Ward v. Clark County.
judges: Schroeder, Leavy, Walker